COPE, Judge.
This is an appeal from a final order determining responsibility for payment for health care services.
On December 16, 1989, Dallard Clark, Jr. suffered serious head injuries in an accident and was hospitalized in a coma at Jackson Memorial Hospital. Dallard and his mother, Sarah Clark Miller, were members of appellant Humana Medical Plan, Inc. (Humana), a health maintenance organization (HMO), which provided group coverage through Ms. Miller’s employer, the Dade County School Board. The previous month, however, Ms. Miller had taken advantage of the school board’s 1989 open enrollment period and had elected to change the family’s HMO to a group plan offered by CAC-Ramsay Health Plans, Inc. (CAC). The effective date of the CAC policy was January 1, 1990. Ms. Miller’s coverage under the Humana policy expired on December 31,1989.
.On January 26, 1990, Dallard, Jr. was transferred to appellee Health South Rehabilitation Center of Miami (Health South). Ms. Miller presented a Humana identification card to the admitting nurse, who telephoned Humana to verify coverage. Humana verified coverage and authorized Dallard, Jr.’s admittance. The admitting nurse at Health South forwarded a confirmatory letter to Hu-mana, which read, in pertinent part:
As per our telephone conversation, this letter will verify our agreement for patient, Dallard Clark. He is to be admitted to our skilled nursing facility for acute rehabilitation in our Head Injury Program.
The agreed upon per diem rate is $675.00, excluding physician charges_
Please sign below and return this letter to me in order to confirm our agreement. ...
This letter was signed by Humana on February 16, 1990, the day of Dallard, Jr.’s discharge, and returned to Health South along with an additional memorandum confirming the per diem rate. Health South subse-quéntly billed Humana. Humana, however, refused to pay, claiming that its responsibility to provide coverage ceased when coverage under the CAC plan began on January 1.
Health South sued Ms. Miller and Humana for damages. Humana impleaded CAC as a third-party defendant, contending that CAC was responsible for payment. Ms. Miller filed a cross-complaint against Humana and CAC, alleging that either or both were responsible for the Health South claim. The trial court ruled that Humana must pay, and Humana has appealed.
As between Health South and Huma-na, Humana is clearly obligated to pay. Hu-mana orally authorized Dallard, Jr.’s admission and signed an agreement providing for a per diem rate at which Humana was to reimburse Health South. Having promised to pay Health South for the services rendered to Dallard, Jr., Humana must make good on the promise.
Humana suggests that Ms. Miller should be responsible for payment to Health South because she erroneously presented a Humana identification card to the admitting nurse. We reject that suggestion. Humana was the entity with superior knowledge of the effective dates of coverage and the terms of its plan. Dallard, Jr. had been hospitalized when the Humana plan was in effect, and Humana would be more knowledgeable about whether Humana’s plan provided continuation coverage during the child’s convalescence. A subscriber is entitled to rely on the superior knowledge of an HMO and cannot be faulted for the HMO’s error in verifying coverage.
The next question is whether Humana is entitled to reimbursement by CAC, given that CAC’s HMO coverage was in effect at the time Dallard, Jr. was admitted to Health South. . CAC argues, and the trial court agreed, that Humana was obligated to provide continuation coverage to Dallard, Jr. in this case.
*1027 Section 641.3111, Florida Statutes (1989), provides:
Extension of benefits. — Every health maintenance contract shall provide that termination of the contract by the health maintenance organization shall be without prejudice to any continuous loss which commenced while the contract was in force, but any extension of benefits beyond the period the contract was in force may be predicated upon the continuous total disability of the subscriber, and may be limited to the duration of the contract benefit period, if greater than 3 months, or for a time period of not less than three months, or to the payment of the maximum benefits payable under the contract.
(Emphasis added). The language of the statute clearly indicates that continued coverage of a loss under this section is only required if the HMO terminated the coverage. Here, Ms. Miller elected to terminate the Humana policy when she decided to switch to CAC. Since the termination was by the subscriber, not the HMO, section 641.3111 is inapplicable.
CAC argues alternatively that its own plan provides no coverage because it excludes pre-existing medical conditions. We reject that argument. To exclude pre-exist-ing medical conditions, the CAC policy would have to contain the explicit disclaimer required by section 641.31(16), Florida Statutes (1989).[1] The CAC policy contains no such disclaimer. Thus, CAC was obligated to provide coverage to Dallard, Jr. for his injuries from January 1,1990, onward.
It is clear from the foregoing that CAC had become the HMO for the family beginning on January 1, 1990, and that Hu-mana’s coverage had ceased. At the time coverage under the CAC plan began, Dal-lard, Jr. was already hospitalized with serious injuries. Thereafter, it became necessary to transfer him from the hospital to the rehabilitation center. Humana, the predecessor HMO, erroneously authorized treatment that the successor HMO, CAC, should have provided. Although Humana approved the transfer, CAC does not dispute the medical necessity or the reasonableness of the costs incurred at Health South. Here, the CAC plan was in force and CAC was being compensated to provide health s'ervices for the Miller family. Absent a particularized showing that CAC was harmed by Humana’s approval of the admission to Health South,[2] it is our view that the HMO being paid to provide coverage is the one that should ultimately bear the expense. Therefore, CAC must reimburse Humana for the payment Humana must make to Health South.
Affirmed in part, reversed in part, and remanded for further proceedings consistent herewith.

. Section 641.31(16), Florida Statutes (1989), provides:
The contract must clearly disclose the intent of the health maintenance organization as to the applicability or nonapplicability of coverage to pre-existing conditions. If coverage of the contract is not to be applicable to preexisting conditions, the contract shall specify, in substance, that coverage pertains solely to accidental body injuries resulting from accidents occurring after the effective date of coverage and that sicknesses are limited to those which first manifest themselves subsequent to the. effective date of coverage.

. No such showing has been made.